IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAMARCO WATTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cv-0778-MJR-RJD |
| | ) |
| WESLEY MONROE, | ) |
| MINH SCOTT, | ) |
| DENNIS YOUNG, | ) |
| KIM RICHARDSON, | ) |
| TAMMY HARMON, and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

**I.  INTRODUCTION**

Plaintiff Damarco Watts, currently an inmate at Menard Correctional Center, within the Illinois Department of Corrections (IDOC), brings this civil rights action under 42 U.S.C. 1983, against various employees of the Illinois Department of Corrections (IDOC) and Wexford Health Sources, Inc. (Wexford), a contractor that provides healthcare services to IDOC inmates.

When he initially filed this lawsuit, Watts was confined at Pinckneyville Correctional Center, he sued one Defendant, and his case was randomly assigned to Judge J. Phil Gilbert, United States District Judge. In his Order on threshold review of the pro se complaint under 28 U.S.C. 1915A, Judge Gilbert explained that Watts complained of events that occurred while he was being transferred from Centralia

Correctional Center to Pinckneyville Correctional Center. Judge Gilbert found that the complaint stated cognizable Eighth Amendment claims for excessive force (Count 1) and failure to provide medical care/deliberate indifference (Count 2) against correctional officer Wesley Monroe. *See* Doc. 10. Discovery, motions, and amendments followed. Ultimately, counsel was recruited for Plaintiff Watts and filed a third amended complaint on his behalf. *See* Doc. 99.

The operative complaint is Watts' third amended complaint, filed in January 2017. It reasserts the excessive force and deliberate indifference claims against Monroe. It also asserts deliberate indifference claims against five other Defendants – Minh Scott, Dennis Young, Kim Richardson, Tammy Harmon, and Wexford – plus claims for infliction of emotional distress and assault and battery against some of the named Defendants.

In June 2016, the case was transferred from Judge Gilbert to the undersigned District Judge via Administrative Order No. 188. Now before the Court is a motion to dismiss portions of the third amended complaint for failure to state a claim (Doc. 103) and an exhaustion-based summary judgment motion (Doc. 105). Both motions were filed by Defendants Richardson, Harmon, and Wexford (collectively, "the Wexford Defendants").[1] As explained below, the Court grants the dismissal motion as to Count III, denies the dismissal motion as to Count IV, and denies the summary judgment motion.

---

[1] The three Wexford Defendants also filed an answer on June 2, 2017 (Doc. 102).

## II. SUMMARY OF KEY ALLEGATIONS

The third amended complaint alleges the following. On July 30, 2014, Watts was placed on a bus for transfer from Centralia Correctional Center to Pinckneyville Correctional Center. Doc. 99, ¶ 13. While en route, the bus stopped at Lincoln Correctional Center, where Watts was to change busses. *Id*. at ¶ 15. As Watts waited in handcuffs to board the bus headed to Pinckneyville, Defendant Wesley Monroe "grabbed plaintiff by the neck and slammed his face into the front of the bus and then dragged him in between two buses, while threatening to do further harm to plaintiff." *Id*. at ¶ 16. During the altercation Watts injured his right eye. *Id*. at ¶ 18. Defendants Minh Scott and Dennis Young (both correctional officers) observed the altercation but failed to intervene. *Id*. at ¶ 21. After arriving at Pinckneyville Correctional Center, Nurses Kim Richardson and Tammy Harmon examined Watts but declined to provide treatment. *Id*. at ¶ 27. Watts was examined by an optometrist one week later, but he continues to experience discomfort and impaired vision in his right eye. *Id*. ¶¶ 29-32.

## III. APPLICABLE LEGAL STANDARDS

### A. Motions to Dismiss

Rule 12(b)(6) governs motions to dismiss for failure to state a claim on which relief can be granted. The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *See Richards v. Mitcheff*, **696 F.3d 635, 637 (7th Cir. 2012);** *McReynolds v. Merrill Lynch & Co.*, **694 F.3d 873, 878 (7th Cir. 2012).** A complaint must state a claim that is facially plausible. *Vinson v. Vermilion County, Il.*, **776 F.3d 924, 928 (7th Cir. 2015).** To avoid Rule 12(b)(6) dismissal, it must contain "enough facts

to state a claim for relief that is plausible on its face." *Scott v. Chuhak & Tecson, P.C.*, **725 F.3d 772, 782 (7th Cir. 2013)**, *quoting Bell Atl. Corp. v. Twombly*, **550 U.S. 544, 570 (2007)**. *Accord Foster v. Principal Life Ins. Co.*, **806 F.3d 967, 971 (7th Cir. 2015)**.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *D.B. ex rel. Kurtis B. v. Kopp,* **725 F.3d 681, 684 (7th Cir. 2013)**, *quoting Ashcroft v. Iqbal,* **556 U.S. 662, 678 (2009)**. The complaint must "go beyond mere labels and conclusions" and contain "enough to raise a right to relief above the speculative level." *G&S Holdings, LLC v. Continental Cas. Co.,* **697 F.3d 534, 537-38 (7th Cir. 2012)**.

In assessing a complaint under Rule 12(b)(6), the district court construes the complaint in the light most favorable to the plaintiff, "accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Hecker v. Deere & Co.*, **556 F.3d 575, 580 (7th Cir. 2009)**, *cert. denied,* **558 U.S. 1148 (2010)**, *quoting Tamayo v. Blagoyevich*, **526 F.3d 1074, 1081 (7th Cir. 2008)**.

Rule 12(b)(6) motions must be decided based on the pleadings, the materials attached thereto, and documents referred to in the complaint and central to the plaintiff's claim or subject to proper judicial notice. If matters outside the pleadings are presented to and considered by the court, the motion should be converted to a summary judgment motion, with notice given and additional briefing permitted. *See Rogers v. Cartage Co.*, **794 F.3d 854, 861 (7th Cir. 2015); Fed. R. Civ. P. 12(d);**

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Geinosky v. City of Chicago*, 675 F.3d 743, 751 n.1 (7th Cir. 2012).

    B.    <u>Motions for Summary Judgment</u>

Summary judgment is proper only if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011), *citing* FED. R. CIV. P. 56(a).

The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), *quoting* FED R. CIV. P. 56(e)(2). A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

On summary judgment, the district court construes the facts and draws the reasonable inferences in favor of the non-moving party. *Cole v. Board of Trustees of Northern Illinois University*, 838 F.3d 888, 895 (7th Cir. 2016). While generally a district court's role on summary judgment is *not* to evaluate the weight of the evidence,

assess witness credibility, or determine the truth of the matter, but only to determine whether a general issue of triable fact exists, a different standard applies to summary judgment motions based on exhaustion in prisoner lawsuits. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**.

A motion for summary judgment based upon failure to exhaust administrative remedies typically requires a hearing to determine any contested issues regarding exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** In the case at bar, (a) the Wexford Defendants raised the affirmative defense of failure to exhaust in their answer (Doc. 102, p. 8), and (b) the question of exhaustion presents a purely legal question, so no hearing is required.

### C. Exhaustion under the Prison Litigation Reform Act

Lawsuits brought by prisoners are governed by the PLRA, 42 U.S.C 1997e, which requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust *before* he commences his federal litigation. He cannot exhaust while his lawsuit is pending. *See Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7th Cir.**

1999); *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must *dismiss* the suit. *See Jones v. Bock*, **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[2]

The law of this Circuit requires strict adherence to the PLRA's exhaustion requirement. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.** *See also Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) ('This circuit has taken a strict compliance approach to exhaustion").** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011);** *Jones*, **549 U.S. at 211,** *citing Porter v. Nussell*, **534 U.S. 516, 524 (2002).** But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. 1997e(a).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*,

---

[2] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* FED. R. CIV. P. 12(d).

548 U.S. 81, 89-90 (2006).  Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  *See also Booth v. Churner*, 532 U.S. 731, 737 (2001) (exhaustion requirement will help "filter out some frivolous claims.").

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. *Perez*, 182 F.3d at 535, citing 42 U.S.C 1997e(a); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).  A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending.  *Perez*, 182 F.3d at 535.   The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the state.  *See Jones*, 549 U.S. at 218.

### D. Exhaustion under Illinois Law

In Illinois, the process for exhausting administrative remedies is laid out in the IDOC's Grievance Procedures for Offenders.  **20 Ill. Adm. Code 504.810.**  The inmate must first speak with his counselor about the problem.  **20 Ill. Admin. Code 504.810(a).** If unable to resolve a dispute with the counselor, the prisoner may file a written grievance with the Grievance Officer within sixty days of discovery of the dispute.  *Id.* The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible."  **20 Ill. Admin. Code 504.810(b).**

The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer (CAO). **20 Ill. Adm. Code 504.830(d)**. The prisoner then has the opportunity to review the CAO's response. *Id.* If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision. **20 Ill. Adm. Code 504.850**. Completion of this process exhausts a prisoner's administrative remedies.

The procedures also allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).** A final decision of the ARB will exhaust the grievance requirement.

## IV. ANALYSIS

The Wexford Defendants seek dismissal of Counts III and IV of the third amended complaint under Rule 12(b)(6), contending that these counts fail to state a claim against them upon which relief can be granted (Doc. 104, p. 1). In Count III,

Watts alleges a claim against Wexford for violation "of the Eighth Amendment to the Federal Constitution for Inadequate Access to Medical Care Under the Doctrine of Respondeat Superior."

It is true that 42 U.S.C. 1983 does not authorize vicarious liability under the common-law doctrine of *respondeat superior*. **Glisson v. Indiana Department of Corrections, 849 F.3d 372, 383 (7th Cir. 2017).** In the case at bar, the Wexford Defendants correctly note that *respondeat superior* is inapplicable to claims filed pursuant to § 1983. **Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (vicarious liability not applicable to § 1983 claims against municipalities);** *Iskander v. Village of Forest Park*, **690 F.2d 126, 128 (7th Cir. 1982) (extending *Monell*'s holding to § 1983 suits against private corporations).** Accord Collins v. Al-Shami, 851 F.3d 727, 734 (7th Cir. 2017) ("Under existing precedent, neither public nor private entities may be held vicariously liable under § 1983.").

In *Shields v. Illinois Department of Corrections,* **746 F.3d 782, 791 (7th Cir. 2014)**, the Seventh Circuit remarked that, at some point, courts may want to reexamine whether *respondeat superior* should be a source of liability for § 1983 claims filed against private corporations that provide government services. But the Court declined to reverse the established precedent that *respondeat superior* is inapplicable to § 1983 claims against private corporations like Wexford. **Id. at 796. Accord Collins, 851 F.3d at 734 ("we again leave that question for another day").** As such, Watts' *respondeat superior* theory of liability at Count III fails to state a claim upon which relief may be granted. Wexford is entitled to dismissal of Count III.

In Count IV, Watts asserts a state law intentional infliction of emotional distress claim against Defendants Harmon and Richardson. Defendants Harmon and Richardson (both nurses) seek dismissal of Count IV on the basis that Watts failed to file an affidavit of merit pursuant to the Illinois Healing Art Malpractice statute, **735 ILCS 5/2-622 (West 2014).** That Illinois law requires a plaintiff alleging medical malpractice to file an affidavit stating that he has obtained a statement from a health care professional opining that there is a "reasonable and meritorious cause" to file the lawsuit. In his response opposing this motion, Watts argues that an affidavit of merit is not required for intentional infliction of emotional distress claims.

Counsel have not identified, and the undersigned has not located, any Illinois cases squarely addressing the issue of whether a plaintiff asserting an *intentional infliction of emotional distress* claim against a healthcare provider (like the nurses here) must provide a certificate of merit. Clearly, "compliance with section 2–622 [is required] if the alleged conduct involved questions about the medical standard of care or issues that were otherwise so complicated that laypersons would not be able to assess it without expert testimony." *Fiala v. Bickford Senior Living Group, LLC*, **43 N.E.3d 1234, 1242 (Ill. App. 2015).**

But Watts' intentional infliction of emotional distress claim is not so much premised on allegations that Defendants' course of treatment deviated from the appropriate standard of care (thereby requiring expert testimony), as it is based on the argument that Defendants did not provide any treatment at all (i.e., they denied him access to medical care). These assertions are more analogous to a deliberate

indifference claim, where expert testimony is not necessarily required. *See, e.g., Berry v. Peterman*, **604 F.3d 435, 441 (7th Cir. 2010) (in Eighth Amendment deliberate indifference context, "a non-trivial delay in treating serious pain can be actionable even without expert medical testimony showing that the delay aggravated the underlying condition").** Viewing Watts' intentional infliction of emotional distress claim in this framework, the Court finds that the claim does not fall within the scope of the Illinois Healing Art Malpractice statute. Defendants' motion to dismiss will be denied as to Count IV.

Turning to the summary judgment motion, the Wexford Defendants maintain that Watts failed to exhaust all administrative remedies before commencing this suit. As noted above, the Seventh Circuit takes a strict compliance approach to the exhaustion issue, and as IDOC inmate, Watts was required to use the IDOC administrative remedies process. The Wexford Defendants do not dispute that Watts submitted at least one grievance after the excessive force incident. They argue that he did not *specifically* exhaust administrative remedies as to his complaints regarding inadequate medical care.

The IDOC grievance forms direct inmates to: "Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved[.]" **20 Ill. Admin. Code 504.810(c).** Plaintiff Watts submitted two grievances on August 12, 2014 – one a regular grievance, the other marked as an emergency grievance. *See* Doc. 106-1.

In the first grievance, Watts details the altercation that occurred with correctional officer Monroe on July 30, 2014. Doc. 106-1, pp. 1-2. Watts also mentions the medical care he received since the July 30th excessive force incident. *Id*. Although the grievance is somewhat unclear as to whether Watts is complaining that he is receiving inadequate medical treatment, about half of the grievance is devoted to the injuries he suffered and the medical treatment he is receiving. *Id*. Watts mailed this grievance to the ARB. The ARB's Office of Inmate Issues received the grievance on August 18, 2014. *Id*.

Watts drafted a second, similarly worded grievance on August 12, 2014, describing how during the bus transfer: "Out of nowhere, Officer Monroe .. came up to me, grabbed the back of my neck, and forcefully slammed my face into the front of the transfer bus, causing me to lose vision in my right eye…." Doc. 106-2, pp. 3-4. Watts submitted the second grievance as an emergency grievance directly to the Pinckneyville warden. On September 22, 2014, the warden denied the grievance as an emergency and directed Watts to submit it via the normal procedure. *Id*., p. 3.

On May 18, 2015, Watts mailed a letter to the ARB inquiring as to the status of the first grievance he submitted in August 2014. Doc. 106-3, pp. 1-2. Along with the letter, Watts appears to have attached the second grievance, the one that was denied as an emergency by the warden. Doc. 106-2, pp. 3-4.

The ARB issued a decision on Watts' first grievance on June 22, 2015. Doc. 106-4. The ARB decision discusses Watts' allegations regarding the excessive force incident and the medical care he received. It states that the ARB contacted Healthcare staff at Pinckneyville Correctional Center who indicated that Watts was seen on July 31, 2014

for an alleged assault by the transfer officer. *Id*. The ARB also contacted staff at Lincoln Correctional Center, the Internal Affairs office at Pinckneyville Correctional Center, and Internal Affairs at Menard Correctional Center. *Id*. The ARB opinion concludes (*id*.):

> Based on a total review of all available information, it is recommended the grievance be ruled mixed action. This office is unable to substantiate Offender Watts allegations [sic] of staff misconduct, therefore this portion of the grievance is denied. However, Warden Butler and Warden Spiller are to ensure proper documentation is completed in accordance with AD 01.12.105, Reporting of Unusual Incidents.

The document is signed by Sarah Johnson, "Administrative Review Board, Office of Inmate Issues" and Gladyse Taylor, Acting IDOC Director. *Id*.

Although Watts' grievance could have been more specific in identifying which aspects of his medical treatment he found unsatisfactory, the ARB investigated Watts' medical history by contacting the Pinckneyville Health Care Unit. Because the ARB reviewed Watts' grievance on the merits, including the allegations regarding medical treatment, the Court cannot find that Watts did not exhaust administrative remedies. The Seventh Circuit has noted, "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." ***Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).**

Furthermore, Watts filed the August 12, 2014 grievance approximately two weeks after he arrived at Pinckneyville Correctional Center. It is not unreasonable that at that point in time, he would not have known the names of all of the individuals working in the Pinckneyville Health Care Unit. On the record before the Court, the

undersigned cannot conclude that Watts failed to exhaust administrative remedies. Accordingly, the Wexford Defendants' motion for summary judgment merits denial.

V. CONCLUSION

For the reasons explained above, the Court **GRANTS** the Wexford Defendants' motion to dismiss (Doc. 103) as to Count III, **DENIES** their motion to dismiss (Doc. 103) as to Count IV, and **DENIES** their summary judgment motion (Doc. 105).

IT IS SO ORDERED.

DATED June 28, 2017.

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge